## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | |
| | : | |
| COMMERZBANK AG, and | : | |
| COMMERZBANK AG NEW YORK | : | |
| BRANCH | : | |
| | : | |
| Defendants. | : | |

### DEFERRED PROSECUTION AGREEMENT

Defendant Commerzbank AG and Commerzbank AG New York Branch (collectively, the "Company"), by its undersigned representatives, pursuant to authority granted by the Company's Board of Directors, and the United States Department of Justice, Criminal Division, Asset Forfeiture and Money Laundering Section; the United States Attorney's Office for the District of Columbia; and the United States Attorney's Office for the Southern District of New York (the "Offices"), enter into this deferred prosecution agreement (the "Agreement"), the terms and conditions of which are as follows:

### Criminal Information and Acceptance of Responsibility

1.      The Company acknowledges and agrees that the Offices will file the attached four-count criminal Information in the United States District Court for the District of Columbia charging the Company with (1) knowingly and willfully conspiring to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of Title 18, United States Code, Section 371, and Title 50, United States Code, Sections 1701-1705, and the regulations issued thereunder; and (2) willfully violating various provisions of the Currency and Foreign Transactions Reporting Act of 1970, as amended (commonly known as the Bank Secrecy Act, or "BSA"), including (a) failure to maintain an effective anti-money laundering ("AML") program,

1

in violation of Title 31, United States Code, Sections 5318(h) and 5322(b) & (c); (b) failure to file suspicious activity reports, in violation of Title 31, United States Code, Sections 5318(g) and 5322(b) & (c); and (c) failure to establish due diligence for foreign correspondent accounts, in violation of Title 31, United States Code, Sections 5318(i) and 5322(d). In so doing, the Company: (a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives, for purposes of this Agreement and any charges by the United States arising out of the conduct described in the attached Statements of Fact, any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Columbia.

2.     The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statements of Fact attached hereto as Attachments A and B and incorporated by reference into this Agreement, and that the allegations described in the Information and the facts described in Attachments A and B are true and accurate. Should the Offices pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Statements of Fact in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statements of Fact at any such proceeding.

## Term of the Agreement

3.     This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years from that date (the "Term"). The Company agrees, however, that, in the event the Offices determine, in their sole discretion, that the

Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Offices, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Offices' right to proceed as provided in Paragraphs 18 through 22 below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Paragraph 13, for an equivalent period. Conversely, in the event the Offices find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Paragraph 13, and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early.

### Relevant Considerations

4.      The Offices enter into this Agreement based on the individual facts and circumstances presented by this case and the Company. Among the factors considered were the following: (a) the Company's willingness to acknowledge and accept responsibility for the actions of its officers, directors, employees, and agents as charged in the Information and as set forth in the Statements of Fact; (b) the Company's remedial actions taken to date; (c) the Company's agreement to continue to enhance its sanctions and BSA/AML compliance programs; (d) the Company's agreement to continue to cooperate with the Offices in any ongoing investigation of the conduct of the Company and its current or former officers, directors, employees, and agents as provided in Paragraph 5 below; (e) the Company's willingness to settle any and all civil and criminal claims currently held by the Offices for any act within the scope of the Statements of Fact; and (f) the Company's cooperation with the Offices, including voluntarily making U.S. and foreign employees available for interviews, and collecting, analyzing, and organizing voluminous evidence and information for the Offices.

3

### Future Cooperation and Disclosure Requirements

5.     The Company shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and Attachments A and B and other conduct under investigation by the Offices, at any time during the Term of this Agreement, subject to applicable laws and regulations, until the date upon which all investigations and prosecutions arising out of such conduct are concluded, whether or not those investigations and prosecutions are concluded within the term specified in Paragraph 3.  At the request of the Offices, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company, or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and Attachments A and B and other conduct under investigation by the Offices or any other component of the Department of Justice at any time during the Term of this Agreement, subject to applicable laws and regulations.  The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.     The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, related to investigations by the Offices known to the Company or about which the Offices may inquire.  This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Company.

4

b.      Upon request of the Offices, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Offices the information and materials described in Paragraph 5(a) above on behalf of the Company.  It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      The Company shall, at its cost, use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Company.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      Upon request from the Offices, the Company shall use its good faith efforts to identify additional witnesses who, to the Company's knowledge, may have material information concerning this investigation, and notify the Offices.

e.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Offices pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government of such materials as the Offices, in their sole discretion, shall deem appropriate.

f.      The Company shall provide information, materials, and testimony as necessary or requested to identify or to establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or judicial proceeding.

6.      In addition to the obligations in Paragraph 5, during the Term of the Agreement, should the Company learn of credible evidence or allegations of any violation of United States federal law, including any criminal conduct by the Company or any of its employees acting within the scope of their employment, the Company shall promptly report such evidence or allegations to the Offices. The Company shall likewise bring to the Offices' attention any administrative, regulatory, civil, or criminal proceeding or investigation of the Company relating to the BSA or the anti-money laundering laws of any other jurisdiction. Nothing in this Agreement shall be construed to require the Company to produce any documents, records or tangible evidence that are protected by the attorney-client privilege, work product doctrine, or subject to the rules and regulations of the regulators regarding the disclosure of confidential supervisory information, or to take any steps in violation of German or other applicable law and legal principles.

### Payment of Monetary Penalty

7.      The Offices and the Company agree that, based on the factors set forth in 18 U.S.C. § 3572(a), and 18 U.S.C. § 3571(d), a fine of $79 million is an appropriate fine in this case. The Company agrees to pay a fine in the amount of $79 million to the United States Treasury within five (5) business days of the date on which this Agreement is signed. The fine amount represents twice the value of the transactions identified in Paragraph 65 of Attachment A. The Company and the Offices agree that this fine is appropriate given the facts and circumstances of this case, including the nature and seriousness of the Company's conduct. The $79 million fine is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Offices that $79 million is the maximum fine that may be imposed in any future prosecution, and the Offices are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Offices agree that under

6

those circumstances, they will recommend to the Court that any amount paid under this

Agreement should be offset against any fine the Court imposes as part of a future judgment. The

Company agrees that it will not claim, assert, or apply for a tax deduction or tax credit with

regard to any federal, state, local, or foreign tax for any fine paid pursuant to this Agreement.

The Company shall pay the fine plus any associated transfer fees within five (5) business days of

the date on which this Agreement is signed, pursuant to payment instructions provided by the

Offices in their sole discretion. The Company releases any and all claims it may have to such

funds, and further certifies that it passes clean title to these funds, which are not the subject of

any lien, security agreement, or other encumbrance. Transferring encumbered funds or failing to

pass clean title to the funds in any way will be considered a breach of this agreement. The

Company shall indemnify the government for any costs it incurs associated with the passing of

clean title to the funds.

**Forfeiture**

8.      As a result of the conduct described in the Information and Attachments A and B,

the Company agrees to make a total payment in the amount of $563 million (the "Forfeiture

Amount") pursuant to this Agreement. The Forfeiture Amount is comprised of a payment of

$263 million on account of the conduct described in Attachment A (the "Sanctions Forfeiture

Amount"), and $300 million on account of the conduct described in Attachment B (the

"BSA/AML Forfeiture Amount"). The Government intends to distribute the BSA/AML

Forfeiture Amount to victims of the fraud at the Olympus Corporation, consistent with the

applicable Department of Justice regulations. *See* 21 U.S.C. § 853(i)(1) and 28 C.F.R. Part 9.

a.      The Company agrees that the facts contained in the Information and

Attachment A establish that the Sanctions Forfeiture Amount is subject to civil forfeiture to the

United States and that this Agreement, the Information, and Attachment A shall be attached and

incorporated into a civil forfeiture complaint (the "Sanctions Civil Forfeiture Complaint"), a copy of which is attached hereto as Attachment D, that will be filed against the Sanctions Forfeiture Amount in the United States District Court for the District of Columbia.  The Company further agrees that the funds used to pay the Sanctions Forfeiture Amount were funds involved in transactions which promoted the carrying on of the conspiracy to violate IEEPA. The Company agrees that there is a substantial connection between the funds used to pay the Sanctions Forfeiture Amount and the offense alleged in the Sanctions Civil Forfeiture Complaint.

            b.      The Company agrees that the facts contained in the Information and Attachment B establish that the BSA/AML Forfeiture Amount is subject to civil forfeiture to the United States, and that this Agreement, the Information, and Attachment B shall be attached and incorporated into a civil forfeiture complaint (the "BSA/AML Civil Forfeiture Complaint"), a copy of which is attached hereto as Attachment E, that will be filed against the BSA/AML Forfeiture Amount in the United States District Court for the Southern District of New York.

            c.      By this Agreement, the Company expressly waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Company also waives service of the Sanctions Civil Forfeiture Complaint and the BSA/AML Civil Forfeiture Complaint, and *in rem* jurisdiction as to the Sanctions Forfeiture Amount and the BSA/AML Forfeiture Amount. The Company agrees to sign any documents, including a stipulation as to the involvement of the Sanctions Forfeiture Amount in the transactions in violation of IEEPA, necessary for the Government to complete the forfeiture of

8

the funds used to pay the Forfeiture Amount. The Company further agrees to the entry of Final Orders of Forfeiture against the Forfeiture Amount.

       d.     Upon Court approval of this Agreement, the Company shall release any and all claims it may have to the Forfeiture Amount and execute such documents as necessary to accomplish the forfeiture of the funds. The Company agrees that it will not file a claim with any Court or otherwise contest the civil forfeiture of the Forfeiture Amount and will not assist a third party in asserting any claim to the Forfeiture Amount. The Company certifies that the funds used to pay the Forfeiture Amount are not the subject of any lien, security agreement, or other encumbrance. Transferring encumbered funds or failing to pass clean title to these funds in any way will be considered a breach of this agreement.

       e.     The Company agrees that the Forfeiture Amount shall be treated as a penalty paid to the United States government for all purposes, including tax purposes. The Company agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, local, or foreign tax for any fine or forfeiture paid pursuant to this Agreement.

       f.     The Company shall transfer the entire Forfeiture Amount of $563 million less the credit set forth in paragraph 8(h)—totaling $392 million—within five (5) business days after executing this Agreement (or as otherwise directed by the Offices following such period) and shall pay any associated transfer fees. Such payment shall be made pursuant to wire instructions provided by the Offices. If the Company fails to timely make the payment required under this paragraph, interest (at the rate specified by 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment, unless the Offices, in their sole discretion, chooses to reinstate prosecution pursuant to Paragraphs 18-22, below.

g.      The Forfeiture Amount paid is final and shall not be refunded should the Government later determine that the Company has breached this Agreement and commences a prosecution against the Company.  In the event of a breach of this Agreement and subsequent prosecution, the Government may pursue additional civil and criminal forfeiture in excess of the Forfeiture Amount.  The Government agrees that in the event of a subsequent breach and prosecution, it will recommend to the Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of its judgment.  The Company understands that such a recommendation will not be binding on the Court.

h.      The Offices agree that payments by the Company in connection with its concurrent settlement of the related criminal action brought by the New York County District Attorney's Office, totaling $171 million, shall be credited against the Sanctions Forfeiture Amount.  The Company agrees to make the payment of $171 million to an account designated by the New York County District Attorney's Office.

### Conditional Release from Liability

9.      Subject to Paragraphs 18 through 22, the Offices agree, except as provided herein, that they will not bring any criminal or civil case against the Company or any of its subsidiaries, affiliates, successors or assigns, relating to:  any of the conduct described in the Statements of Fact, attached hereto as Attachments A and B, or the criminal Information filed pursuant to this Agreement.  The Offices, however, may use any information related to the conduct described in the attached Statements of Facts against the Company:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

10

a.     This Agreement does not provide any protection against prosecution for any future conduct by the Company.

b.     This Agreement does not provide any protection against prosecution for conduct that is not explicitly referenced in Attachments A and B, the criminal Information filed pursuant to this Agreement, or that was not disclosed by the Company or its subsidiaries to the Offices prior to the date on which this Agreement was signed.

c.     This Agreement does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

d.     Notwithstanding the foregoing, all civil claims of the United States related to the allegations in the Amended Complaint filed on or about August 17, 2014 in United States ex rel. [Under Seal] v. [Under Seal], No. 13 Civ. 8095 (S.D.N.Y.), are expressly reserved and excluded from any release of liability, nothing herein shall be construed to release, impair or otherwise affect any such claims of the United States, and no amount paid by the Company or its subsidiaries in connection with this agreement may be used to offset any recovery of the United States pursuant to any such claims.

### Corporate Compliance Program

10.     The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of Title 50, United States Code, Section 1705, and the regulations issued thereunder, throughout its operations, including those of its affiliates, agents, and joint ventures the Company can control, whose operations include managing client accounts for clients subject to Office of Foreign Asset Control ("OFAC") sanctions, processing payments denominated in United States Dollars, and directly or indirectly supervising such operations. The Company has further represented that it

11

has implemented and will continue to implement a compliance and ethics program designed to ensure compliance with the BSA, including implementing an effective anti-money laundering compliance program, adequate customer due diligence for correspondent accounts, and appropriate detection and reporting of suspicious activity.

      11.    In order to address any deficiencies in its sanctions compliance programs, the Company represents that it shall:

      a.    Continue to apply the OFAC sanctions list to United States Dollar ("USD") transactions, the acceptance of customers, and all USD cross-border Society for Worldwide Interbank Financial Telecommunications ("SWIFT") incoming and outgoing messages involving payment instructions or electronic transfer of funds;

      b.    Not knowingly undertake any USD cross-border electronic funds transfer or any other USD transaction that is prohibited by U.S. law or OFAC regulations concerning Iran, North Korea, the Sudan (except for those regions and activities exempted from the United States embargo by Executive Order No. 13412), Syria, Cuba, or Burma;

      c.    Continue to complete Financial Economic Crime sanctions training, covering U.S., U.N., and E.U. sanctions and trade control laws for all employees (1) involved in the processing or investigation of USD payments and all employees and officers who directly or indirectly are supervising these employees, (2) involved in execution of USD denominated securities trading orders and all employees and officers who directly or indirectly are supervising these employees; and (3) involved in transactions or business activities involving any nation or entity subject to U.S., E.U., or U.N. sanctions, including the execution of cross border payments;

      d.        Continue to apply its written policy requiring the use of SWIFT Message Type ("MT") MT 202COV bank-to-bank payment message where appropriate under SWIFT Guidelines, and by May 30, 2015, certify continuing application of that policy;

      e.        Continue to apply and implement compliance procedures and training designed to ensure that the Company's compliance officer in charge of sanctions is made aware in a timely manner of any known requests or attempts by any entity (including, but not limited to, the Company's customers, financial institutions, companies, organizations, groups, or persons) to withhold or alter its name or other identifying information where the request or attempt appears to be related to circumventing or evading U.S. sanctions laws. The Company's Head of Compliance, or his or her designee, shall report to the Offices in a timely manner, the name and contact information, if available to the Company, of any entity that makes such a request;

      f.        Maintain the electronic database of SWIFT Message Transfer payment messages and all documents and materials produced by the Company to the United States as part of this investigation relating to USD payments processed during the period from 2002 through 2008 in electronic format during the period of this Agreement, including any extensions;

      g.        Abide by any and all requirements of the Settlement Agreement, insert date, by and between OFAC and the Company regarding remedial measures or other required actions related to this matter;

      h.        Abide by any and all requirements of the Cease and Desist Order, insert date, by and between the Board of Governors of the Federal Reserve System and the Company regarding measures or other required actions related to this matter;

        i.      Abide by and all requirements of the Settlement Agreement, insert date, by and between the New York Department of Financial Services and the Company regarding remedial measures or other required actions related to this matter;

        j.      The Company shall share with the Offices any reports, disclosures, or information that the Company, by terms of these settlement agreements, and the Cease-and-Desist order, is required to provide to OFAC, the Federal Reserve, and the Department of Financial Services. The Company further agrees that any compliance consultant or monitor imposed by the Federal Reserve or the New York State Department of Financial Services ("DFS") shall, at the Company's own expense, submit to the Offices any report that it submits to the Federal Reserve or DFS.

    12.    With respect to BSA/AML compliance, the Company shall continue its ongoing effort to implement and maintain an effective BSA/AML compliance program in accordance with the requirements of the BSA and the directives and orders of any United States regulator of the Company or its affiliates, including without limitation the Federal Reserve Board, as set forth in its Cease and Desist Order, dated October 16, 2013, and its Written Agreement with the Company, dated June 8, 2012 (the "Consent Orders").

### Corporate Compliance Reporting

    13.    The Company agrees that it will report to the Offices every 90 days during the term of the Agreement regarding remediation and implementation of the compliance measures described in Paragraphs 10-12. Such reports must include specific and detailed accounts of the Company's sanctions and BSA/AML compliance improvements, and must identify any violations of the BSA that have come to the attention of the Company's legal and compliance personnel during the reporting period. At the end of the term of the Agreement, the Company's

14

Chief Executive Officer must certify via his or her signature that the Company's sanctions and BSA/AML compliance improvements have been completed.

14.     The Company shall notify the Offices of any criminal, civil, administrative or regulatory investigation, inquiry, or action, of the Company or its current directors, officers, employees, consultants, representatives, and agents related to the Company's compliance with United States sanctions or anti-money laundering laws, to the extent permitted by the agency conducting the investigation or action and applicable law.  It is understood that the Company shall promptly notify the Offices of (a) any deficiencies, failing, or matters requiring attention with respect to the Company's BSA/AML compliance program identified by any United States regulatory authority within 10 business days of any such regulatory notice; and (b) any steps taken or planned to be taken by the Company to address the identified deficiency, failing, or matter requiring attention.  The Offices may, in their sole discretion, direct the Company to provide other reports about its BSA/AML compliance program as warranted.

15.     For the duration of the Agreement, the Offices, as they deem necessary and upon request to the Company, shall:  (a) be provided by the Company with access to any and all non-privileged books, records, accounts, correspondence, files, and any and all other documents or electronic records, including e-mails, of the Company and its representatives, agents, affiliates, and employees, relating to any matters described or identified in the reports, without regard to the location of such materials; and (b) have the right to interview any officer, employee, agent, consultant, or representative of the Company concerning any non-privileged matter described or identified in the reports, without regard to the location of such person.  To the extent the provisions of this paragraph relate to information or attendance of personnel located outside of the United States, the parties to this Agreement acknowledge that the request,

15

provision, or use of such information, or attendance of personnel, is subject to applicable laws and legal principles in the relevant jurisdiction.

## Deferred Prosecution

16.    In consideration of: (a) the past and future cooperation of the Company described in Paragraphs 5 and 6 above; (b) the Company's payment of a fine of $79 million and forfeiture of $563 million; and (c) the Company's implementation and maintenance of remedial measures as described in Paragraphs 10-12 above, the Offices agree that any prosecution of the Company for the conduct set forth in the attached Statements of Fact, the criminal Information filed pursuant to this Agreement, and for the conduct that the Company or its subsidiaries disclosed to the Offices prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

17.    The Offices further agree that if the Company fully complies with all of its obligations under this Agreement, the Offices will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within thirty (30) days of the Agreement's expiration, the Offices shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and in Attachments A and B.

## Breach of the Agreement

18.    If, during the Term of this Agreement, the Company (a) commits any felony under United States federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 10-12 of this Agreement; or (e) otherwise fails specifically to perform or to fulfill

16

completely each of the Company's obligations under the Agreement, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Offices in the United States District Court for the District of Columbia, the United States District Court for the Southern District of New York, or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Offices' sole discretion. Any such prosecution may be premised on information provided by the Company. Any such prosecution relating to the conduct described in the attached Statements of Fact or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

19.     In the event the Offices determine that the Company has breached this Agreement, the Offices agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Company.

17

20.     In the event that the Offices determine that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Offices or to the Court, including the attached Statements of Fact, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Offices.

21.     The Company acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

22.     No later than 90 days prior to the expiration of the period of deferred prosecution specified in this Agreement, the Company, by the management board member who oversees compliance, will certify, on behalf of the Company, to the Offices that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Such certification will be

18

deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

## Sale or Merger of Company

23.     Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, the Company agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

## Public Filing

24.     The Company and the Offices agree that, upon submission of this Agreement (including the Statements of Fact and other attachments hereto) to the Court, the Agreement (and its attachments) shall be filed publicly in the United States District Court for the District of Columbia.

## Public Statements by Company

25.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statements of Fact. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 18 through 22 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statements of Fact

19

will be imputed to the Company for the purpose of determining whether it has breached this

Agreement shall be at the sole discretion of the Offices. If the Offices determine that a public

statement by any such person contradicts in whole or in part a statement contained in the

Statements of Fact, the Offices shall so notify the Company, and the Company may avoid a

breach of this Agreement by publicly repudiating such statement(s) within five (5) business days

after notification. The Company shall be permitted to raise defenses and to assert affirmative

claims in other proceedings relating to the matters set forth in the Statements of Fact provided

that such defenses and claims do not contradict, in whole or in part, a statement contained in the

Statements of Fact. This Paragraph does not apply to any statement made by any present or

former officer, director, employee, or agent of the Company in the course of any criminal,

regulatory, or civil case initiated against such individual, unless such individual is speaking on

behalf of the Company.

26.     The Company agrees that if it issues a press release or holds any press conference

in connection with this Agreement, the Company shall first consult with the Offices to determine

(a) whether the text of the release or proposed statements at the press conference are true and

accurate with respect to matters between the Offices and the Company; and (b) whether the

Offices have any objection to the release. The Company further agrees that upon learning of any

plans by a subsidiary or affiliate to issue a press release or hold a press conference in connection

with the Agreement, it will promptly consult with the Offices as provided in the prior sentence.

27.     The Offices agree, if requested to do so, to bring to the attention of law

enforcement and regulatory authorities the facts and circumstances relating to the nature of the

conduct underlying this Agreement, including the nature and quality of the Company's

cooperation and remediation. By agreeing to provide this information to such authorities, the

Offices are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

28.     This Agreement is binding on the Company and the Offices but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Offices will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.  This agreement does not bind any affiliates or subsidiaries of the Company, other than those that are parties to this Agreement, but is binding on the Company itself.  To the extent the Company's compliance with this agreement requires it, the Company agrees to ensure that its wholly-owned subsidiaries, and any successors and assigns, comply with the requirements and obligations set forth in this agreement, to the full extent permissible under locally applicable laws and regulations, and the instructions of local regulatory agencies.

### Notice

29.     Any notice to the Offices under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

M. Kendall Day
Acting Chief, Asset Forfeiture and Money Laundering Section
Criminal Division
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005

with copies to:

Ronald C. Machen Jr.
United States Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

and:

Preet Bharara
United States Attorney for the Southern District of New York
1 Saint Andrew's Plaza
New York, New York 10007

Any notice to the Company under this Agreement shall be given by personal delivery, overnight

delivery by a recognized delivery service, or registered or certified mail, addressed to:

Volker Barth
Divisional Board Member Compliance
Hafenstrasse 51
60261 Frankfurt am Main, Germany

Günter Hugger
General Counsel
Kaiserstrasse 16
60261 Frankfurt am Main, Germany

Armin Barthel
Managing Director – Head of Legal North America
225 Liberty Street
New York, NY 10281

Notice shall be effective upon actual receipt by the Offices or the Company.

## Execution in Counterparts

30.     This Agreement may be executed in one or more counterparts, each of which shall

be considered effective as an original signature. Further, all facsimile and digital images of

signatures shall be treated as originals for all purposes.

## Complete Agreement

31.     This Agreement sets forth all the terms of the agreement between the Company

and the Offices. No amendments, modifications or additions to this Agreement shall be valid

22

unless they are in writing and signed by the Offices, the attorneys for the Company, and a duly authorized representative of the Company.

**ACCEPTED AND AGREED TO:**

**FOR COMMERZBANK AG:**

Date: Feb 11, 2015          By: _____

Günter Nugger
Commerzbank AG

Date: March 11, 2005          By: _____

Armin Barthel
Commerzbank (New York Branch)

Date: March 11, 2015          By: _____

Nelson A. Boxer
Petrillo Klein & Boxer LLP

Date: March 11, 2015          By: _____

David Brodsky / Lev Dassin
Cleary Gottlieb Steen & Hamilton LLP

24

**FOR THE DEPARTMENT OF JUSTICE:**

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA

Date: 3-11-15

BY: _____

Matt Graves
Maia Miller
Assistant United States Attorneys

PREET BHARARA
UNITED STATES ATTORNEY
FOR THE SOUTHERN DISTRICT OF
NEW YORK

Date: 3-11-15

BY: _____

Bonnie Jonas
Assistant United States Attorney

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION

M. KENDALL DAY
ACTING CHIEF, ASSET FORFEITURE
AND MONEY LAUNDERING SECTION

Date: 3-11-15

BY: _____

Sarah Devlin
Trial Attorney
Asset Forfeiture and Money
Laundering Section